UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT M. PALMER, | ) |
| | ) |
| Movant, | ) |
| | ) |
| vs. | ) No. 4:15 CV 1568 RWS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

This matter is before me on the motion of Robert M. Palmer ("Palmer") to vacate, set aside, or correct a sentence by a person in federal custody pursuant to 28 U.S.C. § 2255. In his motion, Palmer alleges that his initial defense counsel was constitutionally ineffective. For the reasons below, I find that Palmer's claims are without merit. As a result, his motion will be denied.

## I.   BACKGROUND

On August 21, 2013, a grand jury charged Palmer with a four-count indictment. The indictment charged him with: mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2 (Counts 1 and 2) and wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2 (Counts 3 and 4).

The charges stem from Palmer and Mark Driver's ownership and operation of Princeton Partnership LLC. Princeton was an insurance brokerage business purportedly involved in the sale of various insurance and investment products.

Beginning in 2004, Palmer and Driver schemed to defraud Princeton customers. Palmer solicited money from a number of individuals and families, promising to place the funds in suitable investments. Instead of investing the money, Palmer used it for personal expenses and for the general expenses of Princeton. Palmer and Driver also used funds from new Princeton customers to pay old customers under the guise that the old customers were receiving a return on their investment. In furtherance of the scheme to solicit money from Princeton customers, Palmer and Driver committed a series of acts constituting wire fraud. In total, the two defrauded roughly $3 million from Princeton customers. Based on this information, a grand jury indicted Palmer.

James G. Martin, then of Armstrong Teasdale, first represented Palmer. Armstrong Teasdale lawyers Brian Kaveney and Zachary Howenstine assisted Martin. Assistant United States Attorney Hal Goldsmith prosecuted the case against Palmer. Goldsmith and Martin corresponded on several occasions regarding a possible plea agreement. Martin relayed multiple times that he was meeting with his client to see if resolution was possible. On October 11, 2013, Martin informed Goldsmith in an email that Palmer would only accept a plea agreement with less than one year of jail time. On October 16, 2013, Martin reaffirmed to Goldsmith that Palmer was "stuck on spending no more than one year in prison," and would proceed to trial unless offered a plea agreement stipulating as such.

On November 13, 2013, Martin and Goldsmith met to discuss the facts of the case and a potential agreement. Per Goldsmith's affidavit, Martin "presented a number of facts and legal issues that he felt were mitigating evidence that should be considered in crafting a potential plea agreement for Palmer." (Doc. #10-1, Aff. Of Hal Goldsmith, at 4). Goldsmith told Martin he would consider the facts. Shortly thereafter, Martin left Armstrong Teasdale and Kaveney requested a formal plea offer from Goldsmith.

On January 28, 2014, Kaveney forwarded Palmer an email containing the proposed plea offer. The plea offer estimated a total offense level of 20, minus 3 points for acceptance of responsibility, resulting in a guideline sentencing range of 33 to 41 months. Kaveney also informed Palmer that Martin had left Armstrong Teasdale to join Dowd Bennett LLP at the end of January, 2014. Kaveney discussed the plea agreement with Palmer on February 5 and on February 11, 2014 (Doc # 10-2, Aff. of Brian E. Kaveney). In an email to Martin and Kaveney on February 5, 2014, and later, on February 12, 2014, in a meeting with Martin, Kaveney, and Palmer's wife, Palmer emphasized that he felt he had "no other option BUT to go to trial" given the only proposed plea agreement. (Id. at Ex.2, Ex. A.).

On February 11, 2014, Martin filed a motion to withdraw as counsel which was granted on February 12, 2014.[1] Palmer hired Paul D'Agrosa as replacement counsel on or about March 10th, 2014. On April 1, 2014, Goldsmith emailed D'Agrosa and told him that Palmer should seriously consider a plea agreement. On April 3, 2014, D'Agrosa met with Goldsmith, and D'Agrosa told Goldsmith that he discussed the case with Martin and Kaveney to get up to speed and that he had received the proposed plea agreement. After that meeting Goldsmith sent an email to D'Agrosa on April 17, 2014, to ask whether the case could be resolved. Within an hour, D'Agrosa responded that he did not "see a plea happening." The next day, on April 18, 2014, based on D'Agrosa's representation that Palmer would not plead guilty, Goldsmith sent a letter to D'Agrosa formally withdrawing and revoking any prior plea offers. (Doc. # 10-1, Aff. of Hal Goldsmith, p.6).

A few weeks later, federal agents discovered evidence that Palmer made false representations about his annual income on loan/credit applications. In addition, Goldsmith engaged in trial preparation including interviewing witnesses and having a 94-year-old victim give deposition testimony four days before she

---

[1] When Palmer retained Martin as counsel, Martin was a partner at Armstrong Teasdale. Palmer's engagement of legal services was with Armstrong and a retainer was paid to that firm. At their first meeting, Martin told Palmer that going to trial would cost over $300k in legal fees. In light of Palmer's insistence that he go to trial, Martin had to collect an additional retainer in the amount of $100k to continue to represent Palmer. This new retainer was to be paid to Martin's new firm Dowd Bennett. If Palmer elected to keep the Armstrong Teasdale attorneys as his counsel he would also have had to submit an additional retainer to Armstrong. (Doc # 10-2, Aff. of Brian E. Kaveney, Ex.2, Ex. A.).

died.  Because of these further developments and Goldsmith's conclusion that the case against Palmer had grown stronger, Goldsmith declined to offer Palmer the original proposed plea agreement.  Instead he offered one similar to the plea Driver took.  On June 5, 2015, after several rounds of revisions to the plea which Palmer actively participated in, Palmer entered a guilty plea under the final plea agreement negotiated with Goldsmith.  That agreement resulted with a total offense level of 27 with a guideline imprisonment range of 70-87 months.  I sentenced Palmer to a 70 month term of imprisonment.  On October 13, 2015, Palmer filed the present motion to vacate under 28 U.S.C. § 2255.  He asserts that his initial counsel, Martin, Kaveney, and Howenstine, were constitutionally ineffective by failing to adequately review and discuss the plea offer that was withdrawn which presented a guidelines sentencing range of 33-41 months.  Palmer argues that the plea offer was withdrawn before he could be properly counseled about it. He asserts that had he been properly counseled he would have "most likely availed himself of proper legal counsel and accepted the initial plea offer." (Doc. #1, Pet. at 9).  Palmer asks the Court to grant his motion to vacate and allow him to accept the plea offer which had been withdrawn.

## II. LEGAL STANDARD

A motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'"  United States v.

Wilson, 997 F.2d 429, 431 (8th Cir. 1993) (quoting Davis v. United States 417 U.S. 333, 343 (1974)). Under § 2255, "a defendant in federal custody may seek post-conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Watson v. United States, 493 F.3d 960, 963 (8th Cir 2007). A defendant's plea agreement waiver of the right to seek this relief does not waive the right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel. United States v. Morrison, 171 F.3d 567, 568 (8th Cir. 1999).

### III. DISCUSSION

Palmer claims that his initial counsel, Martin, Kaveney, and Howenstine failed to render the effective assistance of counsel guaranteed by the Sixth Amendment. The defendant "faces a heavy burden" in establishing a claim for ineffective assistance of counsel under § 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). A defendant claiming ineffective assistance must show (1) that counsel's performance was deficient and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Failing to meet

6

either portion of the Strickland test is "fatal to an ineffective-assistance claim." Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011).

First, to prove deficiency, the defendant must meet the high burden of showing that his counsel made such serious errors that he or she was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To overcome this presumption, the defendant must prove that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A court need not first determine whether counsel's performance was deficient before examining the alleged prejudice suffered by the defendant as a result of the alleged deficiencies. Id. at 670.

Second, to establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 699. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," requiring "a 'substantial,' not just 'conceivable,' likelihood of a different result." United States v. Frausto, 754 F.3d 640, 643 (8th Cir. 2014) (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)). Though not the case here, even where the defendant raises multiple claims of ineffective assistance, each claim or error must be examined

independently rather than collectively. Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir 2002). In other words, the defendant cannot "build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. at 692 (citing Wainwright v. Lockhart, 80 F3d 1226, 1233 (8th Cir. 1996)).

Palmer argues that he did not receive effective assistance of counsel as guaranteed by the Sixth Amendment because his initial counsel failed to advise Palmer regarding the government's formal plea offer extended on January 28, 2014. In Missouri v. Frye, the Court concluded that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 132 S.Ct. 1399, 1408 (2012). Counsel does not meet the standards outlined in the Sixth Amendment if counsel does not consult with defendant regarding a formal plea offer and allow him "to consider it." Id. To establish prejudice under Frye

> from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.

Id. at 1409.

### a. *Palmer's counsel was not deficient*

Palmer claims that his counsel failed to render effective assistance because his initial counsel did not advise him regarding the government's formal plea offer. He alleges that after Martin left Armstrong Teasdale, Palmer "was not being advised about the plea offer that was sitting on the table during this entire time, but rather was trying to determine who was going to represent him in this ongoing matter since his previous attorneys appeared not to have his interest in mind at the time." (Doc. #1, Pet. at 6).

Palmer's claims are no more than conclusory statements. The undisputed evidence indicates that the government extended the formal plea offer at issue on January 28, 2014. Kaveney stated in his affidavit that he discussed the plea offer with Palmer on February 5 and 11, 2014. He states further that on February 12, 2014, he and Martin met with Palmer and Palmer's wife "to discuss the Government's proposed plea agreement." During the meeting the four "discussed the evidence in the case, how a jury would view the evidence, the benefits of the plea, and what would happen if Mr. Palmer decided to go to trial." (Doc. #10-2, Aff. of Brian Kaveney, at 2). The record is replete with evidence that Palmer's initial counsel provided him with the plea offer and reviewed its ramifications. The record also shows that Martin worked diligently to resolve the case in a manner as favorable as possible to Palmer.

Palmer's assertions that he was abandoned by counsel are unsupported. The February 12th meeting took place at Martin's new firm, Dowd Bennett, after Martin had formally moved to withdraw as counsel and despite the fact that Martin was no longer working for Armstrong Teasdale, the firm which Palmer retained. Although Palmer feels that he was placed in a difficult financial situation after Martin switched law firms, Palmer was not abandoned because Martin and Kaveney advised him regarding the formal plea offer. Palmer had the option to pay the new retainer at Dowd Bennet and Palmer *was* counseled by both Martin and Kaveney about the formal plea offer.

Frye requires only that counsel meet with the client to discuss a formal plea offer in a manner that allows the client to consider the offer. Kaveney's affidavit demonstrates that Palmer's counsel fulfilled this duty. Martin and Kaveney discussed the evidence of the case as well as whether Palmer should accept the plea offer or proceed to trial. As a result, Palmer has failed to establish his initial counsel were constitutionally ineffective.

### b. *Palmer's counsel's alleged deficiency did not prejudice the defense*

Palmer was not prejudiced by his Martin's actions. The government presented a number of emails from Martin and D'Agrosa to Goldsmith explaining that Palmer was not willing to go to jail for more than one year. On October 11, 2013, Martin said in an email, "[i]s there any way to resolve this with less than a year of jail time—that appears the only way I can resolve it from my end." (Doc.

#10-1, Aff. of Hal Goldsmith, Ex. E, at 22). On October 16, 2013, Martin emailed Goldsmith again that Palmer was "stuck on spending no more than one year in prison." Id. Goldsmith made it clear that less than one year of jail time was not in the range of possibilities given the circumstances of the case. Palmer himself said in an email to Goldsmith and Kaveney that he felt he had no choice but to proceed to trial. (Doc. #10-2, Aff. of Brian E. Kaveney, Ex.2, Ex. A.).

Moreover, the record clearly demonstrates that Palmer's new counsel, D'Agrosa, was aware of the plea agreement and counseled Palmer on the ramifications of failing to accept it. Palmer's supposition that Goldsmith revoked the plea offer without warning as some form of punitive action when D'Agrosa was retained is without foundation. D'Agrosa was aware of the plea offer in late March 2014, and discussed it with both Goldsmith and Palmer. On April 17, 2014, long after Palmer had discussed the formal plea offer with Martin and Kaveney in the February 12th meeting, D'Agrosa emailed Goldsmith that he, D'Agrosa, "discussed a plea with Palmer yesterday, after being more familiar with the facts" and that he did not "see a plea happening." (Doc. #10-1, Aff. of Hal Goldsmith, Ex. L, at 38). It was after receiving this email that Goldsmith withdrew the formal plea offer.

Initial counsel (Martin) and new counsel (D'Agrosa) discussed the formal plea offer with Palmer on several occasions. Each lawyer who met with Palmer concluded that Palmer was not willing to accept the plea offer. Frye requires that

11

the defendant show "a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." 132 S.Ct. at 1409. Palmer has not shown that there was a reasonable probability he would have accepted the earlier plea offer. To the contrary, Palmer's stated position was to decline any plea offer which subjected him to a term of imprisonment for more than a year.

Finally, Frye also requires that defendant "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." Id. In the present case it is more than likely that the prosecution would have canceled the offer. On June 1, 2014, Goldsmith discovered evidence "that Palmer and his wife, Heidi, had made false representations in the loan/credit applications regarding Palmer's annual income." (Doc. #10-1, Aff. of Hal Goldsmith, at 7). After communicating this discovery to D'Agrosa, Goldsmith was unwilling to reissue the original plea offer because Goldsmith "knew that the Government's case had gotten stronger with the additional cooperation of Palmer's co-defendant Mark Driver, and better evidence gathered from some of the witnesses in preparation for trial." Id.

Palmer has failed to show that his counsel was constitutionally ineffective. The record establishes that Palmer was counseled by his initial counsel and by his new counsel regarding the plea offer at issue. Palmer had ample time to consider

the offer and rejected it. His decision resulted in a less favorable plea agreement which he accepted. As a result, I will deny Palmer's motion to vacate.

## IV. REQUEST FOR EVIDENTIARY HEARING

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless the motion and the rules and records of the case conclusively show that he is entitled to no relief. Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir 2008) (citing United States v. Ledezma-Rodriguez, 423 F.3d 830, 835-36 (8th Cir. 2005)). Because the record clearly shows that Palmer is not entitled to relief, an evidentiary hearing will not be held.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). To grant such certificate, the judge must find a substantial showing of the denial of a federal constitutional right. Id. at § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). Because Palmer has not made such a showing, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED that** Robert M. Palmer's motion to vacate, set aside, or correct his sentence in federal custody pursuant to 18 U.S.C. § 2255 is **DENIED.**

**IT IS FURTHER ORDERED that** Palmer's motion to limit former counsel's disclosures to the government [6] is **DENIED** as moot.

**IT IS FURTHER ORDERED that** this court will not issue a certificate of appealability, as Palmer has not made a substantial showing of the denial of a federal constitutional right.

A Separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of March, 2017.